UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW B. BOOKER,

                CASE NO. 4:19-cv-12194

      *Plaintiff*,         DISTRICT JUDGE MATTHEW F. LEITMAN

*v.*                 MAGISTRATE JUDGE PATRICIA T. MORRIS

COMMISSIONER OF SOCIAL SECURITY,

     *Defendant.*

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF No. 13, 15)**

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports Defendant Commissioner of Social Security's determination that Plaintiff Matthew B. Booker is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment, (ECF No. 13), be **DENIED**, and the Commissioner's Motion, (ECF No. 15), be **GRANTED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B) and E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, the present case was referred to the undersigned Magistrate Judge to review the final decision of the Commissioner denying Plaintiff's claim for Title II Disability Insurance Benefits (DIB) and claim for Title XVI Supplemental Income Security Benefits (SSI). (ECF No. 3.) This case is before the Court upon the parties' cross-motions for

summary judgment. (ECF No. 13, 15.)

Plaintiff filed applications for DIB and SSI benefits on September 29, 2014, alleging that his disability began on June 23, 2013. (ECF No. 11-5, PageID.303, 307.) The Commissioner denied the claim. (ECF No. 11-4, PageID.199.) Plaintiff first requested a hearing before an ALJ on February 10, 2015, and a hearing was held on September 19, 2016. (*Id.* at PageID.207; ECF No. 11-2, PageID.123.) The ALJ issued a decision on December 7, 2016, finding that Plaintiff was not under a disability within the meaning of the Social Security Act. (ECF No. 11-3, PageID.177.) However, the Appeals Council remanded the case to the ALJ in an Order issued on January 12, 2018. (*Id.* at PageID.194-196.)

After remand from the Appeals Council, a second hearing was held before the ALJ on May 17, 2018. (*Id.* at PageID.64.) Again, the ALJ issued a decision finding that Plaintiff was not under a disability within the meaning of the Social Security Act, on August 15, 2018. (*Id.* at PageID.44-46.) This time, the Appeals Council denied review of the ALJ's decision, (*Id.* at PageID.34), and Plaintiff subsequently filed a complaint seeking judicial review of the ALJ's final decision on July 25, 2019. (ECF No. 1.) He then filed the present Motion for Summary Judgment on November 19, 2019, (ECF No. 13), after which the Commissioner countered with its own Motion on January 22, 2020, (ECF No. 15), and Plaintiff replied on January 30, 2020. (ECF No. 16.)

### B.   Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to

determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id.* at 286 (internal citations omitted).

## C. Framework for Disability Determinations

Disability benefits are available only to those with a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. § 1382c(a)(3)(A). The Commissioner's regulations provide that disability is to

be determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The claimant must provide evidence establishing the residual functional capacity, which "is the most [the claimant] can still do despite [his or

her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.    ALJ Findings

Following the five-step sequential analysis, the ALJ determined that Plaintiff was not disabled. (ECF No. 11-2, PageID.47.) At step one, the ALJ found that Plaintiff met the insured status requirements through December 13, 2018, and that he had not engaged in substantial gainful activity since his alleged onset date of June 23, 2014. (*Id.* at PageID.49.) At step two, the ALJ concluded that Plaintiff had the following severe impairments: history of chronic heart failure; history of paroxysmal atrial fibrillation; obesity; COPD; obstructive sleep apnea (treated with CPAP with no evidence of cardiac sequelae or significant pulmonary hypertension); and a history of osteoarthritis (right knee). (*Id.* at PageID.50.) The ALJ also decided, however, that these impairments did not meet or medically equal a listed impairment at step three. (*Id.*) Next, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform

> sedentary work as defined by SSA, except he is able to lift/carry ten pounds frequently and twenty pounds occasionally; no climbing of ramps, stairs, ropes, ladders, or scaffolds; no balancing; capable of occasional stooping,

kneeling, crouching, and crawling; no exposure to extreme cold, heat[]; no prolonged exposure to high humidity or wetness; no concentrated exposure to pulmonary irritants such as fumes, odors, gas, dust, and poor ventilation; and avoid unprotected heights and fast-moving, heavy machinery.

(*Id.* at PageID.51.) At step four, the ALJ found that Plaintiff could not perform any past relevant work. (*Id.* at PageID.55.) At step five, the ALJ found that Plaintiff could perform a limited range of sedentary work based on transferrable work skills he acquired from prior occupations and that appropriate jobs existed in significant numbers in the national economy. (*Id.* at PageID.56.) This finding relied on the testimony of the Vocational Expert (VE). (*Id.* at PageID.55-56.) The ALJ stated that it "finds no reason to discount the [VE's] testimony that such acquired skills transfer to the job of scheduler, which exists in significant number [sic] in the national economy." (*Id.* at PageID.56.)

### E.  Administrative Hearing

#### 1.   Medical Expert Testimony

At the hearing held on May 17, 2018, Dr. Steven Lee Shilling testified first. (ECF No. 11-2, PageID.67.) Dr. Shilling had not personally examined Plaintiff or served as a medical expert for the SSA for Plaintiff. (*Id.*) However, he testified that there was "sufficient objective medical and other evidence" to allow him to "form opinions about the nature and severity" of Plaintiff's complaints and impairments. (*Id.*) Dr. Shilling testified that Plaintiff's impairments, established by the evidence, included "a component of chronic heart failure…high blood pressure…COPD and asthma…atrial fibrillation…sleep apnea[,]" and noted that Plaintiff's "[body mass index (BMI)] was greater than 30." (*Id.* at

PageID.67-68.) But Dr. Shilling testified that none of the impairments meet or equal an impairment described in the Listings. (*Id*. at PageID.68.)

He testified that Plaintiff would require the option to sit or stand during the workday, but that he did not see anything that would limit the amount of sitting Plaintiff could do at a time. (*Id*. at PageID.69.) However, Dr. Shilling believed that Plaintiff would only be able to stand for about two hours at a time. (*Id*.) Dr. Shilling's belief that Plaintiff would only be able to stand for a few hours was not based on a cardiovascular impairment, but on Plaintiff's weight, which was "greater than 300 pounds." (*Id*.) Plaintiff confirmed that his weight at the time of the hearing was 315 pounds. (*Id*.) Dr. Shilling believed Plaintiff would be able to stand for two hours in an eight-hour day given "normal breaks" throughout a work day, such as a lunch break. (*Id*. at PageID.70-71.) He believed Plaintiff would be able to walk for 30 minutes on level ground. (*Id*. at PageID.71.) He also believed that Plaintiff would be able to frequently lift or push and pull 10 pounds and occasionally lift or push and pull 20 pounds, would not have any postural limitations, should be precluded from unprotected heights, could occasionally climb ramps or stairs, and would not have any limitations on balance. (*Id*. at PageID.71-72.)

Further, Dr. Shilling believed Plaintiff's BMI would limit his ability to stoop, kneel, crouch, and crawl. (*Id*. at PageID.72.) There were no stated manipulative limitations, but Dr. Shilling suggested that Plaintiff would have some environmental limitations due to his COPD and asthma. (*Id*. at PageID.72-73.) Specifically, he noted that "concentrated exposure, and I'll just use the category of pulmonary irritants, would be prohibited." (*Id*. at PageID.73.) Dr. Shilling noted that Plaintiff should avoid extreme heat or humidity. (*Id*.)

Plaintiff would be precluded from working around "fast moving heavy machinery." (*Id*.) There were not stated limitations regarding exposure to extreme cold, noise or vibration, or "wetness." (*Id*. at PageID.73-74.)

### 2. Plaintiff's Testimony

Next, Plaintiff testified. (*Id*. at PageID.84.) Plaintiff testified that he was 51 years old, was not working at that time, and was living with his sister. (*Id*.) Plaintiff's responsibilities regarding operating the household with his sister included cleaning his room and the bathroom. (*Id*. at PageID.86.) Previously, Plaintiff worked at a Taco Bell restaurant, (*Id*. at PageID.87), then worked at a bank. (*Id*. at PageID.88.) Plaintiff testified that at the bank, where he worked as a janitor, he would lift buckets weighing up to five pounds, and that he believed he could still lift objects of that weight. (*Id*. at PageID.91.) The ALJ asked Plaintiff, "let's say that the [janitorial] job, or one just like it, is available across the street. Can you think of any reason why you couldn't go over there and do that job?" (*Id*. at PageID.92.) Plaintiff responded, "No."[1] (*Id*.) Plaintiff testified that a side effect of the medication he took was dizziness when he stood, but that he was able to curb that side effect by standing more slowly. (*Id*. at PageID.94.) Plaintiff was instructed by his doctor to "walk around the block once then sit down…to try to lose weight[;]" Plaintiff's doctor instructed him to do this every other day. (*Id*. at PageID.100.)

### 3. The VE's Testimony

---

[1] Later, when questioned by his own attorney, Plaintiff clarified that he would be unable to perform his janitorial duties at a hypothetical job "across the street;" Plaintiff appears to have misunderstood the ALJ's question. (ECF No.11-2, PageID.97-98.)

The VE testified. (*Id*. at PageID.101.) When the ALJ asked whether she had any prior personal or professional contact with Plaintiff, the VE said "[n]o." (*Id*.) When asked whether she had any discussions with the ALJ, Plaintiff, or his representative about the merits or facts of this case, the VE said "[n]o." (*Id*.) The ALJ asked Plaintiff's attorney whether he had any objections to the VE serving in this case, and Plaintiff's attorney responded, "[n]o, your Honor." (*Id*. at PageID.102.)

The VE requested clarification regarding Plaintiff's prior employment at the fast food restaurant; Plaintiff confirmed that at the restaurant, he worked as an assistant manager. (*Id*.) The ALJ asked the VE to classify Plaintiff's past work. (*Id*. at PageID.103.) The VE considered all of Plaintiff's previous employment and classified the various positions as follows: janitor, DOT 382.664-101, SVP 3, semiskilled, physical demand per DOT medium, light as performed; and fast food assistant manager, DOT 185.137-010, SVP 5, skilled, physical demand per DOT light, heavy as performed. (*Id*.) The ALJ then asked the VE to consider a hypothetical individual who is able to

> lift 10 pounds frequently, 20 pounds occasionally, capable of walking 30 minutes at a time on level ground, after walking 30 minutes he would need to sit for 10 minutes, capable of standing two hours at a time, pushing and pulling are within the same limitations as lifting and carrying, capable of occasionally climbing ramps or stairs, not capable of climbing ropes, ladders or scaffolds and not capable of balancing, can only occasionally stoop, kneel, crouch or crawl. [This individual] has no manipulative limitations. Environmentally [this individual] cannot work in areas of extreme cold or extreme heat or high humidity. With respect to pulmonary irritants such as fumes, odors, gases, dust or poor ventilation [this individual] cannot have concentrated exposure to pulmonary irritants. He should not work at unprotected heights and he cannot work with fast moving heavy machinery.

(*Id*. at PageID.104.) The ALJ asked whether such an individual could perform any of

Plaintiff's past work. The VE indicated that he or she could not perform either the janitorial position or the assistant manager in a fast food restaurant position, partially due to the exposure to fumes, odors, dust, and poor ventilation. (*Id*. at PageID.104-105.) The VE further testified that such a person would, however, have some transferrable skills that had been developed in Plaintiff's previous positions. (*Id*. at PageID.105.) The VE testified that certain transferrable skills had been developed, such as "interviewing type skills," and that such an individual could perform an interviewer position, DOT 205.362-014, SVP 5, a sedentary position. (*Id*.) The VE testified that there were approximately 130,000 jobs of that type in the national economy. (*Id*.) Plaintiff did not obtain any transferrable skills from his janitorial position. (*Id*.)

Plaintiff's attorney then asked the VE if she had previously testified in this matter, to which the VE responded, "I don't believe so. I – I can't say 100%. I don't know." (*Id*. at PageID.106.) Plaintiff's attorney pointed out, "[i]t appears that you did." (*Id*.) Plaintiff's attorney then asked the VE whether the transferrable skill of interviewing could be acquired by an individual who did not conduct any interviewing, to which the VE responded, "[n]o, it would not." (*Id*.) The VE clarified that she based her opinion on Plaintiff's prior employment as an assistant manager, assuming that interviewing was a normal function performed by an assistant manager. (*Id*.) She then specified that if Plaintiff did not perform those functions, "those skills would not be acquired[,] and he would not have those skills." (*Id*. at PageID.106-107.) Plaintiff's attorney pointed out evidence of Plaintiff's work history, a form which indicated that Plaintiff did not hire and fire employees. (*Id*. at PageID.107.) The VE then stated, "[o]kay. Then I would say those [interviewing] skills

would not transfer then." (*Id.*).

At this point, the ALJ asked Plaintiff about his prior employment at Taco Bell. (*Id.* at PageID.110.) Plaintiff testified that he was an assistant manager for "over 14 years" at "quite a few" different locations; he transitioned from "corporate to franchise" and "ran" six stores. (*Id.*) He described his position as a "moving around manager to go;" he would travel to each of the six different stores within the franchise, which known as "Sundance," as required. (*Id.* at PageID.111.) He would "sometimes" set the employees schedules. (*Id.* at PageID.115.) If someone was interested in employment at the Taco Bell, Plaintiff would take the individual's information and, sometimes, offer a recommendation to his manager, but generally passed the information and the decision to his manager. (*Id.*) Plaintiff's manager would act on Plaintiff's advice when it was given. (*Id.*) Plaintiff would conduct an orientation training for new employees. (*Id.* at PageID.116.) He was also responsible for making sure that minors working at the restaurant complied with relevant laws, including clocking out by 10:00 p.m. (*Id.* at PageID.117.)

The ALJ returned to questioning the VE. (*Id.* at PageID.118.) The ALJ asked the VE what skills would transfer from Plaintiff's prior assistant manager position at Taco Bell. (*Id.*) The VE testified that there were scheduling skills that would transfer, including "a scheduling job," DOT 215.367-014, SVP 4, a semi-skilled, sedentary position, with 270,000 jobs in the national economy. (*Id.*)

The ALJ posed a second hypothetical, suggesting an individual who could

[lift] ten pounds frequently, 20 pounds occasionally, not able to climb ramps or stairs, ladders – excuse me only occasionally – if there were no climbing of ramps or stairs, ladders, ropes or scaffolds, no balancing and only occasional stooping,

kneeling, crouching or crawling, no manipulative limitations, no visual or communication limitations but environmentally limited to no extreme cold, no extreme heat, no wetness, no prolonged exposure to humidity or wetness, unlimited noise and vibration, no concentrated exposure to pulmonary irritants such as fumes, odors, gases, dust or poor ventilation, and should not be exposed to hazards such as [] unprotected heights or fast moving machinery.

(*Id*. at PageID.118-119.) The VE responded that for such an individual, the same number of scheduling jobs would remain available in the national economy. (*Id*. at PageID.119.)

When asked by Plaintiff's attorney about the specifics of a scheduling job, the VE explained, "[i]n that particular position you're scheduling employees as far as their work schedules are concerned. So taking a look at the staff that you have available, making sure that there's staff coverage for work shift, scheduling those employees[;]" she further explained that these positions are "personal [sic] schedulers. These could be in [] plant environments, they could be in office environments, they could be in store environments." (*Id*.) When asked by the ALJ, the VE testified that there was no conflict between her testimony and the DOT. (*Id*. at PageID.120.)

### F.  Governing Law

The ALJ must "consider all evidence" in the record when making a disability

decision. 42 U.S.C. § 423(d)(5)(B). The regulations[2] carve the evidence into categories: "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513 (2016). "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. 20 C.F.R. § 404.1513(a) (2016). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. 20 C.F.R. § 404.1513(d) (2016). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). Both "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still

---

[2] Various amendments have been made to the regulations since Plaintiff filed his claim. *See, e.g.*, Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (January 18, 2017) (effective March 27, 2017). Because the changes do not alter the outcome here—and, relatedly, they do not appear to exercise an impermissible retroactive effect on Plaintiff's rights, as the amendments are largely procedural changes in the process for analyzing evidence, *cf. Combs v Comm'r of Soc. Sec.*, 459 F.3d 640, 647 (6th Cir. 2006)—and the parties do not discuss them, it is unnecessary to determine whether they apply. Therefore, like many other courts, I will utilize the regulations in effect when Plaintiff filed his claim and the case was decided by the ALJ, along with the new regulations that explicitly apply to claims during this period. *See, e.g.*, 20 C.F.R. § 404.1527; *see generally* Revisions to Rules Regarding the Evaluation of Medical Evidence, 81 Fed. Reg. 62560, 62578 (September 9, 2016); *see also Rodriguez v. Colvin*, 3:15CV1723, 2018 WL 4204436, at *4 n. 6 (D. Conn. 2018) ("[T]he Court reviews the ALJ's decision under the earlier regulations because the plaintiff's application was filed before the new regulations went into effect." (citing *Maloney v. Berryhill*, No. 16-cv-3899, 2018 WL 400772, at *1 (E.D. N.Y. 2018) (same)); *Miller v. Comm'r of Soc. Sec.*, No. 1:17-cv-0718, 2018 WL 2773372, at *5 n. 3 (N.D. Ohio 2018) ("Plaintiff's claim was filed before March 27, 2017, and the ALJ's decision was rendered before the new regulations took effect. For the sake of consistency, the court continues to cite the language from the former regulations that were in effect at the time of the ALJ's decision."), *Rep. & Rec. adopted by* 2018 WL 2766020 (N.D. Ohio 2018); *Woodall v. Berryhill*, No. 1:17-cv-01289, 2018 WL 3133442, at *7 n. 3 (N.D. Ohio 2018) (applying the rules effective when the claimant applied for benefits), *Rep. & Rec. adopted by* 2018 WL 3126552 (N.D. Ohio 2018); *Meeks v. Comm'r of Soc. Sec.*, No. 4:17-cv-45, 2018 WL 1952529, at *4 n. 2 (E.D. Tenn. 2018) (applying the rules effective when the ALJ decided the case).

do despite the impairment(s), and physical and mental restrictions." *Id.* When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. 20 C.F.R. § 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Because Plaintiff filed his claim before March 27, 2017, he is entitled to the benefit of the treating-source rule.  Under that rule, certain opinions from her treating physicians can receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(c)(2). The ALJ does not owe a treating

opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d). Thus, the ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits must give specific reasons, supported by record evidence, for the weight granted to a treating source's opinion. *Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

An ALJ must also analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in SSR 96-7p, 1996 WL 374186 (July 2, 1996).[3]

---

[3] Although the Commissioner has rescinded SSR 96-7p and eliminated the term "credibility" from Administration policy, SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016), the underlying regulation has remained materially unchanged, *see* 20. C.F.R. § 404.1529(c), and I agree with the courts in this District that have continued to apply SSR 96-7p to cases arising prior to its rescission. *See, e.g., Cooper v. Comm'r of Soc. Sec.*, No. 16-cv-13477, 2017 WL 3923984, at *3 (E.D. Mich. August 21, 2017), *Rep. & Rec. adopted by* 2017 WL 3891971 (E.D. Mich. Sept. 9, 2017); *Tuttle v. Comm'r of Soc. Sec.*, No. 16-11144, 2017 WL 2928021, at *6 n. 3 (E.D. Mich. June 9, 2017), *Rep. & Rec. adopted by* 2017 WL 2905125 (E.D. Mich. July 7, 2017).

Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir.1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529(a) (2016); SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529 (2016); SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments will "not alone establish that [he or she is] disabled." 20 C.F.R. § 404.1529(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1

(July 2, 1996). Instead, the absence of objective, confirming evidence forces the ALJ to consider the following factors:

    (i)    [D]aily activities;
    (ii)   The location, duration, frequency, and intensity of . . . pain;
    (iii)  Precipitating and aggravating factors;
    (iv)  The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
    (v)   Treatment, other than medication, . . . received for relief of . . . pain;
    (vi)  Any measures . . . used to relieve . . . pain.

20 C.F.R.§ 404.1529(c)(3) (2016); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996). Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996).

## G. Arguments and Analysis

Throughout his Motion, Plaintiff advances two main arguments in support of his conclusion that substantial evidence does not support the ALJ's decision: 1) the ALJ erred in failing to identify and resolve a conflict between the VE's testimony and the DOT; and 2) the ALJ's transferrable skills analysis lacked the support of substantial evidence. (ECF No. 13, PageID.1739.)

### 1. Conflict Between the VE Testimony and the DOT

Plaintiff argues that the ALJ erred in finding that Plaintiff had a transferrable skill. (*Id*. at PageID.1748.) Specifically, Plaintiff argues that his experience as a fast food manager does not transfer to the VE's proposed position as a scheduler. (*Id*. at PageID.1748-1749.) Plaintiff maintains that the VE's testimony, which provided that a scheduler could work in a plant, store, or office environment, was inconsistent with the

DOT description of a personnel scheduler. (*Id.*) Because the ALJ did not investigate and resolve this alleged discrepancy at the hearing, Plaintiff contends that remand is required. (*Id.* at PageID.1749-1750.)

"As an initial matter, neither the ALJ nor the VE is required to follow the DOT." *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168 (6th Cir. 2009), citing *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003) (holding that "the ALJ and consulting vocational experts are not bound by the Dictionary in making disability determinations because the Social Security regulations do not obligate them to rely on the Dictionary's classifications."). Although Plaintiff's argument turns on whether the ALJ had a duty to, and failed to, investigate the VE's testimony, this Report and Recommendation provides a brief analysis regarding the transferability of Plaintiff's skill for thoroughness. DOT 215.367-014, the DOT code for personnel scheduler that the VE referred to, provides in full:

> Compiles weekly personnel assignment schedules for production department in manufacturing plant: Studies production schedules and staffing tables to ascertain personnel requirements. Determines and records work assignments according to worker availability, seniority, job classification, and preferences. Compiles and oversees in-plant distribution of work schedule. Adjusts schedules to meet emergencies caused by extended leave or increased production demands. Compiles annual seniority lists on which employees indicate vacation preferences and approves leave requests to prevent production losses.

Plaintiff argues that the VE's testimony was in conflict with the DOT definition because the definition refers to work in a "plant" environment, and Plaintiff's work was in a fast food restaurant. However, SSR 82-14, 1982 WL 31389, at *5 (Jan. 1, 1982), under the heading "How transferability is determined in general," provides factors that determine

transferability, including

> (1) the same or a lesser degree of skill is required, because people are not expected to do more complex jobs than they have actually performed (i.e., from a skilled to a semiskilled or another skilled job, or from one semiskilled to another semiskilled job); (2) the same or similar tools and machines are used; and (3) the same or similar raw materials, products, processes or services are involved.

*Id*. SSR 82-41 also provides that "[a] complete similarity of all these factors is not necessary. There are degrees of transferability ranging from very close similarities to remote and incidental similarities among jobs." *Id*. Further, SSR 82-41 provides that

> where job skills have universal applicability across industry lines, e.g., clerical, professional, administrative, or managerial types of jobs, transferability of skills to industries differing from past work experience can usually be accomplished with very little, if any, vocational adjustment where jobs with similar skills can be identified as being within an individual's RFC.

Here, Plaintiff contends that his scheduling experience at Taco Bell was not transferable based on the DOT definition of personnel scheduler, that the VE's testimony was inconsistent with the definition, and the ALJ failed to fully investigate the discrepancy. However, the skill that is disputed here is scheduling; a "clerical, professional, administrative, or managerial" skill, for which SSR 82-41 provides that "transferability of skills to industries differing from past work experience can usually be accomplished with very little, if any, vocational adjustment[.]" *Id*. at *6. Even if it was not for a position within the exact same industry, there was substantial evidence provided at the hearing that Plaintiff had obtained the transferrable skill of personnel scheduling—indeed, Plaintiff testified that his experience as an assistant manager involved setting the employee schedule. (ECF No. 11-2, PageID. 115.) Contrary to Plaintiff's argument, scheduling, a

clerical, administrative, or managerial skill, may be transferred to a different industry with "very little, if any, vocational adjustment." *Id*.

Secondly, Plaintiff argues that the ALJ erred in failing to investigate the alleged discrepancy between the VE's testimony and the DOT definition. At the end of the VE's testimony, the ALJ asked the VE whether the testimony conflicted with the DOT; the VE responded that it did not. (ECF No. 11, PageID.120.) Even if the VE's testimony did, in fact, conflict with the DOT, the ALJ still fulfilled his duty to inquire. In *Beinlich*, the Sixth Circuit held that the ALJ "fully complied with SSR 00-4p when he asked the VE whether there was 'any discrepancy between [her] opinions and the DOT standards for the requirements of the jobs [she] named.'" *Beinlich*, 345 F. App'x at 168 (internal citation omitted). The Court further held that the ALJ is "under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR 00-4p." *Id*. at 168. Thus, the ALJ fully complied with his requirement to inquire into the VE's testimony, and Plaintiff's first argument is without merit.

### 2. Lack of Substantial Evidence

Plaintiff then argues that the ALJ's finding of Plaintiff's transferrable scheduling skill was not supported by substantial evidence. (ECF No. 13, PageID.1750.) Specifically, Plaintiff argues that a lack of support in substantial evidence is demonstrated by the following arguments: a) the VE was a flawed witness because she stated that she had no prior professional relationship with this case, although she testified at the previous, first hearing before the ALJ; b) the ALJ's analysis of a transferrable skill failed to consider relevant regulations and policy; and c) the ALJ considered the incorrect time period when

analyzing Plaintiff's transferrable skill. (*Id*. at PageID.1754-1755.) Plaintiff argues that these errors were not harmless. (*Id*. at PageID.1755-1756.)

### a. Discrepancy in VE Testimony

Plaintiff first contends that the VE misled the ALJ by testifying that she did not have any prior relationship with or knowledge of this case. (ECF No. 13, PageID.1751.) When the ALJ asked the VE whether she had any relationship with the present case, she responded that she did not. Then, when Plaintiff's attorney asked her whether she testified at the previous, first hearing in this case, the VE responded, "I don't believe so. I – I can't say 100%. I don't know." (ECF No. 11, PageID.106.) This discrepancy, Plaintiff argues, indicates insufficient "indicia of reliability" to support the VE's opinion. (ECF No. 13, PageID.1752.) However, the VE provided that her testimony was "based upon the information I heard today," and concluded that Plaintiff possessed a transferrable skill. (ECF No. 11, PageID.118.) The first hearing at which the VE testified took place on September 19, 2016, over a year and a half before the hearing at present hearing. (ECF No. 11-2, PageID.122.)

Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims*, 406 F. App'x a 981; *Warner*, 375 F.3d at 390.  There are some instances in which courts have found a compelling reason to disturb that assessment based on an inability to "perform a 'meaningful review' of the ALJ's decision." *White v. Comm'r of Soc. Sec*., No. 2:19-cv-3982, 2020 WL 1909966, at *7 (S.D. Ohio April 20, 2020), citing *Moyers v. Colvin*, 3:13-cv-0959, 2015 WL 1013992, at *21 (M.D. Tenn. March 9, 2015) (remanding where VE's testimony was "unacceptably vague" prohibiting "meaningful

review of the Commissioner's decision"); *see also Woodruff v. Astrue*, No. 1:12-cv-1752, 2013 WL 821336, at *7 (N.D. Ohio Mar. 5, 2013) ("The VE's testimony on cross-examination revealed multiple bases that could call into question the reliability of his opinion regarding the number of positions for each occupation that he identified. Given that substantial evidence does not support the ALJ's stated reasons for accepting that testimony as reliable, the Plaintiff is entitled to remand on this issue so that the ALJ can consider further evidence and/or clarify the bases for the VE's testimony.").

The facts at hand do not lend themselves to one of the scenarios in which this Court may intrude upon the ALJ's finding of reliability. There was no issue raised of vagueness or confusion regarding the bases for the VE's testimony nor is there any allegation of bias. Here, while the VE testified at a prior hearing in the case, and she appeared to have forgotten about her role in that prior hearing, she testified that her statements were based on the evidence provided to her that day. (ECF No. 11, PageID.118.) This has not precluded a meaningful review of her testimony or the ALJ's decision by this Court. Plaintiff's argument is without merit.

### b.  Reliance on the VE Testimony

Plaintiff next argues that the ALJ's transferability analysis did not comply with "Social Security regulations and policy." (ECF No. 13, PageID.1752.) Plaintiff argues that the ALJ did not "make findings regarding the similarity of scheduling as performed in [Plaintiff's] fast food work and as performed in the scheduling done in manufacturing plants" in accordance with SSR 82-41. (*Id*. at PageID.1754.)

But, as Defendant points out, SSR 82-41 does not apply when, like here, the ALJ

relies on VE testimony to support his step five finding. (ECF No. 15, PageID.1776.) *See Morrow v. Comm'r of Soc. Sec.*, No. 10-14126, 2011 WL 3027860, at \*5 (E.D. Mich. June 28, 2011), *Rep. & Rec.* adopted, 2011 WL 3027899 (E.D. Mich. July 25, 2011). In *Morrow*, quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 549 (6th Cir. 2004), this Court held "SSR 82–41 does not require the identification of transferable skills in cases where the ALJ relies on the testimony of a VE and does not rely solely on the grid." [4] *Id.* As in *Morrow*, here, Plaintiff's argument that a failure to follow SSR 82-41, where the ALJ relied upon VE testimony, "does not provide a reason to disturb the ALJ's findings." *Id.*

### c. Timeline

Finally, Plaintiff argues that the ALJ improperly considered Plaintiff's position at Taco Bell because his employment there took place, primarily, more than 15 years ago. (ECF No. 13, PageID.1755.)  Plaintiff argues that any skills obtained in that role were so long ago that they are no longer "vocationally relevant." (*Id.*).

20 C.F.R. § 404.1565(a) provides:

> We consider that your work experience applies when it was done within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity. We do not usually consider that work you did 15 years or more before the time we are deciding whether you are disabled (or when the disability insured status requirement was last met, if earlier) applies. A gradual change occurs in most jobs so that after 15 years it is no longer realistic to expect that skills and abilities acquired in a job done then continue to apply. The 15–year guide is intended to insure that remote work experience is not currently applied.

---

[4] The "grid" mentioned here refers to the medical-vocational grid, found at 20 C.F.R. Pt. 404, Subpt. P, App. 2, which "directs a conclusion of 'disabled' or 'not disabled' based on the claimant's age and education and on whether the claimant has transferable work skills." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004), citing *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003); *Burton v. Sec'y of Health & Human Servs.*, 893 F.2d 821, 822 (6th Cir. 1990).

*See also Carreno v. Comm'r of Soc. Sec.*, 99 F. App'x 594, 596 (6th Cir. 2004) ("In order to be considered past relevant work, a job must have been performed within the last fifteen years, performed long enough to learn how to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a)."). Plaintiff concedes that he worked, at least, "occasionally and incidentally as a scheduler, for less than one year" and that Plaintiff performed the scheduling duties for "10 months [which were] within 15 years of the ALJ's decision." (ECF No. 13, PageID.1755.) Plaintiff testified at the hearing that he worked for Taco Bell (or, its franchise owner known as Sundance), until 2003. (ECF No. 11-2, PageID.114-115.) However, evidence in Plaintiff's payment history shows that Plaintiff continued to earn income from Sundance in 2004. (ECF No. 11-5, PageID.316.)

The ALJ issued his decision on August 15, 2018. (*Id*. at PageID.44.) In his decision, the ALJ concluded, "[Plaintiff] testified that as an assistant manager at a fast food restaurant he sometimes was in charge of scheduling employees." (*Id*. at PageID.55). Further, the ALJ held, "[h]e testified that he worked such job for over 14 years, with applicable earning record revealing he performed such work until 2004 []." (*Id*.) Finally, "[a]ccordingly, such work was performed within the relevant 15-year look back[,]" and, "the vocational expert indicated that one need not perform a skill full-time to acquire such a skill." (*Id*.)

Plaintiff performed the relevant work within 15 years of the ALJ's decision, even if it was toward the end of the relevant period. (ECF No. 11-5, PageID.316; ECF No. 11-2, PageID.114-115.) The ALJ's decision was supported by substantial evidence in the record, including his payment history up to 2004 from Taco Bell and significant experience in a

position which involved scheduling, to conclude as such. Thus, Plaintiff's argument is unpersuasive.

Plaintiff claims that these supposed errors are not harmless. (ECF No. 13, PageID.1756.) Because none of Plaintiff's arguments have persuaded this Court that an error occurred, this argument is moot. In sum, the ALJ's conclusion was supported by substantial evidence, or, "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241.

### H.   Conclusion

For these reasons, I conclude that substantial evidence does support the ALJ's decision. Consequently, I recommend **DENYING** Plaintiff's Motion, (ECF No. 13), and **GRANTING** the Commissioner's Motion. (ECF No. 15).

## III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have

to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

   Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  May 27, 2020                          S/ PATRICIA T. MORRIS
                                             Patricia T. Morris
                                             United States Magistrate Judge


## CERTIFICATION

   I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.


Date: May 27, 2020                           By s/Kristen Castaneda
                                             Case Manager