UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW B. BOOKER,

    Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

Case No. 19-cv-12194
Hon. Matthew F. Leitman

_____/

**ORDER (1) OVERRULING PLAINTIFF'S OBJECTIONS (ECF No. 18) TO REPORT AND RECOMMENDATION (ECF No. 17); (2) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 15); AND (3) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 13)**

In this action, Plaintiff Matthew B. Booker challenges the denial of his applications for supplemental security income and disability insurance benefits under the Social Security Act. (*See* Compl., ECF No. 1.) Both Booker and Defendant Commissioner of Social Security filed motions for summary judgment. (*See* Mots., ECF Nos. 13, 15.) The assigned Magistrate Judge then issued a Report and Recommendation in which she recommended that the Court deny Booker's motion and grant the Commissioner's motion (the "R&R"). (*See* R&R, ECF No. 17).

Booker has now filed timely objections to the R&R. (*See* Objections, ECF No. 18.) The Court has reviewed Booker's objections and concludes that they do

1

not entitled him to relief. Therefore, for the reasons explained below, the Court **OVERRULES** Booker's Objections, **DENIES** his motion for summary judgment, and **GRANTS** the Commissioner's motion.

**I**

**A**

On September 29, 2014, Booker applied for disability insurance benefits and supplemental security income under the Social Security Act. (*See* ECF No. 11-5, PageID.303, 307.) Booker claimed that he was disabled and entitled to benefits due to, among other things, heart failure, hypertension, sleep apnea, and his weight. (*See* ECF No. 11-6, PageID.349.) The Social Security Administration denied his applications on December 22, 2014. (*See* ECF No. 11-4, PageID.199-206.)

After the Social Security Administration denied Booker's applications, he sought a hearing on that decision before an Administrative Law Judge (the "ALJ"). That hearing was held on September 19, 2016 (the "First Hearing"). Both Booker and vocational expert Cheryl Mosley testified at the First Hearing. (*See* First Hearing Tr., ECF No. 11-2, PageID.122-135.)

The ALJ issued a written decision denying Booker's applications for benefits on December 7, 2016 (the "ALJ's First Decision"). (*See* ALJ's First Decision, ECF No. 11-3, PageID.180-189.) The ALJ found that given Booker's medical conditions, "age, education, work experience, and [residual functional capacity], there [were]

jobs that exist in significant numbers in the national economy that he [could] perform." (*Id.*, PageID.187-189.) The ALJ therefore concluded that Booker was "not disabled" and not entitled to benefits. (*Id.*, PageID.189.)

**B**

Booker appealed the ALJ's First Decision to the Appeals Council. That council vacated the ALJ's First Decision and remanded Booker's case to the ALJ for a new hearing. (*See* ECF No. 11-3, PageID.194-196.)

The ALJ held a second hearing on Booker's applications on May 17, 2018 (the "Second Hearing"). (*See* Second Hr'g Tr., ECF No. 11-2, PageID.64-121.) Both Booker and Mosley testified again at the Second Hearing. During Booker's testimony, he explained that he had previously worked as an assistant manager for several Taco Bell franchises and that as part of that job, he was sometimes responsible for setting the schedule for the restaurant's employees. (*See id.*, PageID.114-115.)

At the beginning of Mosley's testimony, the ALJ asked Mosley a series of preliminary questions. One of the questions was whether Mosley – who, as described above, had testified at the First Hearing – "had any prior personal or professional contact with [Booker]." (*Id.*, PageID.101.) Mosley responded, "no." (*Id.*) Mosley also told the ALJ that she had "reviewed the exhibits from [Booker's] file made available to [her] before the hearing so that [she] could familiarize herself

3

with [Booker's] vocational background." (*Id.*, PageID.102.) Booker's attorney also questioned Mosley. He began his questioning by asking Mosley if she remembered testifying at the First Hearing, and Mosley said that she did not remember providing that testimony:

> Q: Ms. Mosley, did you testify previously in this matter?
>
> A: I don't believe so. I – I can't say 100%. I don't know.
>
> Q: Okay. It appears that you did.
>
> A: Oh, did I?
>
> Q: Um-hum.
>
> A: Okay.
>
> Q: Yeah, yeah, unless there's another Cheryl Mosley.
>
> A: I – I don't think there is. And I didn't know if I did or not.

(*Id.*, PageID.106.)

Mosley later testified about whether the skills Booker developed and/or utilized while working as an assistant manager at Taco Bell were transferable to other lines of employment. (*See id.*, PageID.106-107.) She testified that "based upon information that [she] heard today, there [were] scheduling skills that would transfer." (*Id.*, PageID.118.) She also testified that there were approximately 270,000 sedentary, semi-skilled personnel scheduling jobs in the national economy.

(*See id.*) Finally, at the conclusion of Mosley's testimony, the ALJ asked her if there was any conflict between anything [she] testified to and the Dictionary of Occupational Titles." (*Id.*, PageID.120.) Mosley responded: "No." (*Id.*)

C

The ALJ issued a second decision on August 15, 2018, that again denied Booker's applications for benefits (the "ALJ's Second Decision"). (*See* ALJ's Second Decision, *id.*, PageID.47-57.) Relevant here, the ALJ concluded that Booker had "clearly acquired scheduling skills in his over 14 years of work as a fast food manager." (*Id.* at 56.) In addition, the ALJ found "no reason to discount [Mosley's] testimony that such acquired skills transfer to the job of scheduler, which exists in significant number in the national economy." (*Id.*) For these reasons, among others, the ALJ concluded that Booker was "not disabled" and not entitled to benefits. (*See id.*, PageID.57.)

Booker appealed the ALJ's Second Decision to the Appeals Council, but that body denied review. (*See id.*, PageID.34.)

D

On July 25, 2019, Booker filed this action seeking judicial review of the administrative decision denying his applications for benefits. (*See* Compl., ECF No. 1.) Booker and the Commissioner then filed cross-motions for summary judgment. (*See* Booker Mot., ECF No. 13; Comm'r Mot., ECF No. 15.)

In Booker's motion, he raised two primary arguments. He first argued that the ALJ failed to identify and resolve a conflict between (1) Mosley's testimony that his scheduling skills from his prior job as a fast food manager were transferable to the job of personnel scheduler and (2) the definition of the scheduler job in the Dictionary of Occupational Titles (the "DOT"). (*See* Booker Mot., ECF No. 13, PageID.1748-1750.) More specifically, Booker asserted that "[t]he job of personnel scheduler (DOT 215.367-014) requires (according to the DOT) compiling 'weekly personnel schedules for a production department in a manufacturing plant.'" (*Id.*, PageID.1748-1749.) And he insisted that because he previously worked in the "food service industry" and not the "manufacturing" industry, the ALJ was required "to identify and resolve this form of conflict, in deference to the research done by the Department of Labor in support of publications such as the DOT." (*Id.*) Second, Booker argued that "the ALJ's transferable skills analysis lacked the support of substantial evidence." (*Id.*, PageID.1750-1756.) In support of this argument, Booker contended, among other things, that the ALJ erroneously rested his determination that Booker had transferable skills on Mosley's testimony even though that testimony was not credible or reliable. (*See id.*, PageID.1750-1751.)

The assigned Magistrate Judge issued a report and recommendation on the parties' cross-motions on May 27, 2020. (See R&R, ECF No. 17.) The Magistrate Judge recommended granting the Commissioner's motion and denying Booker's

6

motion. (*See id.*) The Magistrate Judge first addressed Booker's argument that the ALJ failed to identify and resolve the conflict between Mosley's testimony and the DOT. She concluded that "[a]s an initial matter, neither the ALJ nor [Mosley was] required to follow the DOT." (*Id.*, PageID.1805, quoting *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168 (6th Cir. 2009) and citing *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003) (holding that "the ALJ and consulting vocational experts are not bound by the [DOT] in making disability determinations because the Social Security regulations do not obligate them to rely on the [DOT's] classifications").) The Magistrate Judge further explained that even if there was a conflict between Mosley's testimony and the DOT, and even if the ALJ had a duty to investigate that conflict, the ALJ satisfied that burden when he asked Mosley if there were any conflicts between her testimony and the DOT. (*See id.*, PageID.1807.) The Magistrate Judge then, for the purposes of "thoroughness," nonetheless explored whether there was an actual conflict between Mosley's testimony and the DOT. (*Id.*, PageID.1805-1807.) She determined that there was not. She concluded that there was no conflict because "[e]ven if it was not for a position within the same exact industry, there was substantial evidence provided at the hearing that [Booker] had obtained the transferable skill of personnel scheduling." (*Id.*, PageID.1806.)

The Magistrate Judge then turned to Booker's arguments that the ALJ's transferable-skills analysis was not supported by substantial evidence, including Booker's argument that Mosley was not a credible witness. (*See id.*, PageID.1807-1812.) She concluded that "none of [Booker's] arguments [] persuaded th[e] Court that an error occurred." (*Id.*, PageID.1812.)

## II

Booker filed his objections to the R&R on March 8, 2021. (*See* Objections, ECF No. 24.) The Court will address each objection in turn below.

## A

In Booker's first objection, he again argues that the ALJ failed to identify and resolve a conflict between (1) Mosley's testimony that he (Booker) had scheduling skills that transferred to the job of personnel scheduler and (2) the DOT definition of scheduler. (*See id.*, PageID.1814-1816.) This argument rests upon an essential assumption: namely, that there *was* a conflict between Mosley's testimony and the DOT. But Booker has not persuaded the Court that such a conflict exists. In his objections, Booker dedicates only a single sentence, in a footnote, to the existence of this purported conflict: "Contrary to the Report and Recommendation's characterizations, fast food restaurants and industrial plants (and their employee scheduling tasks) differ much more than not being within the 'same exact industry' – they are rather obviously not remotely the same industry." (*Id.*, PageID. 1814 n.1.)

This lone sentence falls far short of a persuasive showing that Booker's scheduling skills were not transferable and that Mosley's testimony therefore conflicted with the DOT. Moreover, as the Magistrate Judge persuasively explained over several pages in the R&R, the task of scheduling "may be transferred to a different industry with very little, if any, vocational adjustment." (R&R, ECF No. 17, PageID.1806-1807; internal quotation marks omitted). In Booker's objections to the R&R, he did not respond, in any meaningful way, to the Magistrate Judge's analysis and explanation as to why there was not a conflict between Mosley's testimony and the DOT. Thus, because Booker has not proven the premise supporting this objection (and for all of the reasons set forth at pages 11-14 of the Commissioner's Motion for Summary Judgment, ECF No. 15, PageID.1772-1775), the objection is **OVERRULED.**

## B

In Booker's second objection, he argues that the ALJ's conclusion that he (Booker) had transferable scheduling skills – which rested on Mosley's testimony – was not supported by substantial evidence because Mosley's testimony was unreliable. (*See* Obj., ECF No. 18, PageID.1817-1818.) More specifically, Booker insists that the ALJ erred when he relied on Mosley's testimony because she lied about her preparation for the Second Hearing. (*See id.*) Booker's argument proceeds as follows:

9

- Mosley testified at the First Hearing;

- At the Second Hearing, Mosley testified that she had "reviewed the exhibits from [Booker's] file made available to [her] before the hearing so that [she] could familiarize herself with [Booker's] vocational background." (Second Hr'g Tr., ECF No. 11-2, PageID.102);

- Mosley further testified at the Second Hearing that (1) she had no "prior personal or professional contact with [Booker]" (*id.*, PageID.101); (2) she "didn't know" if she had testified at the First Hearing (*id.*, PageID.106);

- If Mosley were telling the truth about having reviewed his file prior to the Second Hearing, Mosley would necessarily have seen her own testimony from the First Hearing, and she would have remembered testifying at the First Hearing when asked about it at the Second Hearing. (Obj., ECF No. 18, PageID.1817.); and

- Mosley "forgetting that she testified previously revealed that she had not prepared for the second hearing as she claimed – a hearing in which she changed her opinion on the key issue of transferable skills." (*Id.*)

Booker's point about the inconsistency in Mosley's testimony is a fair one. It is reasonable to question whether, or how thoroughly, Mosley actually reviewed Booker's file prior to the Second Hearing. And it likewise seems reasonable to question whether Mosley's testimony about her preparation for the Second Hearing

10

was entirely truthful. But the time to raise these questions was during cross-examination of Mosley at the Second Hearing before the ALJ, not in these proceedings. Booker was represented by counsel at the Second Hearing, and that counsel was given the opportunity to cross-examine Mosley. Accordingly, Booker's counsel could have and should have explored the depth of Mosley's preparation for the Second Hearing, and exposed the purported falsity of her testimony, before the ALJ. Indeed, that is where counsel should have raised issues about Mosley's credibility in the first instance because "[t]he credibility of the vocational expert's testimony ... [is] within the province of the ALJ to determine." *Jetton v. Saul*, 2020 WL 8458830, at *3 (W.D. Ky. Nov. 24, 2020) (quoting *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994)), report and recommendation adopted at 2021 WL 412273 (W.D. Ky. Feb. 5, 2021). Because Booker (1) had a full and fair opportunity at the Second Hearing to attack Mosley's credibility by exposing the purported falsity of her testimony about her level of preparation and (2) failed to mount that attack, his objection based on Mosley's false testimony and lack of credibility comes too late. This objection is therefore **OVERRULED**.

## C

Finally, in Booker's third objection, he argues the Magistrate Judge violated what is known as the *Chenery* doctrine, *see SEC v. Chenery*, 318 U.S. 80, 93-94 (1943), when she "provide[d] a new analysis" regarding Booker's transferable skills

11

that used a rationale "not put forward by the ALJ." (Obj., ECF No. 18, PageID.1818.) According to Booker, under the *Chenery* doctrine, an "ALJ's decision cannot be defended on a basis not articulated in [the ALJ's] order." (*Id.* quoting *Hardy v. Berryhill*, 908 F.3d 309, 313 (7th Cir. 2018).) But as the Commissioner accurately points out, "[t]he R&R did not invent a new rationale for the ALJ's decision. Indeed, the ALJ explicitly found that [Booker] possessed the transferable skill of scheduling. The R&R merely explained why this existing rationale was legally and factually correct." (Resp. to Obj., ECF No. 19, PageID.1824.) Moreover, the Magistrate Judge was simply demonstrating that the essential premise of Booker's argument on the transferability-of-skills question – that he did not have transferable scheduling skills – is neither accurate nor supported by the record. This objection is therefore **OVERRULED**.

### III

For all of the reasons explained above, Booker's objections to the R&R (ECF No. 18) are **OVERRULED**. Booker's motion for summary judgment (ECF No. 13) is **DENIED** and the Commissioner's motion for summary judgment (ECF No. 15) is **GRANTED**.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: March 30, 2021

12

     I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 30, 2021, by electronic means and/or ordinary mail.

                                            s/Holly A. Monda
                                            Case Manager
                                            (810) 341-9764